**MOONEY WIELAND WARREN**
Jaren Wieland ISB No. 8265
512 W. Idaho St., Ste. 103
Boise, ID 83702
Tel.: (208) 401-9219
Fax: (888) 234-8543
Email: jaren.wieland.service@mooneywieland.com

*Local Counsel for Plaintiff West Palm*
*Beach Firefighters' Pension Fund*

[Additional counsel listed on signature page]

### UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| WEST PALM BEACH FIREFIGHTERS' PENSION FUND, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> LAMB WESTON HOLDINGS, INC., THOMAS P. WERNER, and BERNADETTE M. MADARIETA, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff West Palm Beach Firefighters' Pension Fund ("West Palm Beach Fire" or "Plaintiff"), by and through counsel, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Lamb Weston Holdings, Inc. ("Lamb Weston" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, and conference calls concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants (as defined herein).

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities who purchased Lamb Weston common stock between July 25, 2023 and July 23, 2024, inclusive (the "Class Period"), against Lamb Weston and certain of its officers and executives, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Lamb Weston, based in Eagle, Idaho, is one of the largest producers and distributors of frozen potato products, including French fries. The Company sells its products through a network of internal sales personnel and independent brokers, agents, and distributors to chain restaurants, wholesale, grocery, mass merchants, club retailers, specialty retailers, and food-service distributors and institutions, among others, including fast-food chains. McDonald's Corporation is the Company's largest customer.

3.      By the start of the Class Period in July 2023, Lamb Weston announced that it had completed the design of a new Enterprise Resource Planning ("ERP") software system that the Company would work to implement across its operations.  The new ERP system was critically important to Lamb Weston, as the system would interface with the most important aspects of Lamb Weston's business and operations, including, among other things, inventories and customer order shipments.  According to Lamb Weston, the new ERP system would drive efficiency through increased automation that would replace outdated technologies.  Throughout the Class Period, and specifically by November 2023, the Company was transitioning some of its previous financial and operating systems to its newly designed ERP system.

4.      Throughout the Class Period, Defendants made positive statements about the design and implementation of its new ERP system and failed to disclose any issues with the system. For example, Lamb Weston emphasized that, through the design of its new ERP system, the Company had "strengthen[ed] [its] operational infrastructure."  The Company also claimed that it had experienced only the "usual bumps" during its transition to the ERP system, and specifically assured investors that "[t]he estimated financial impact of the [ERP] system's go live is included in our fiscal 2024 targets."

5.      These and similar statements made throughout the Class Period were false and misleading.  In truth, Defendants knew of, or recklessly disregarded, significant, ongoing problems associated with the Company's new ERP system that would hinder its successful implementation. Notwithstanding these problems, Lamb Weston proceeded with transitioning to the new ERP system despite the risk that an unsuccessful implementation would negatively impact the Company's business and operations.  As a result, the Company's statements concerning its business, operations, and prospects, including its financial guidance for 2024, lacked a reasonable

factual basis.  As a result of Defendants' misrepresentations and omissions, shares of Lamb Weston common stock traded at artificially inflated prices during the Class Period.

6.     The truth began to emerge before the markets opened on April 4, 2024, when Lamb Weston disclosed that it had experienced significant challenges with its transition to the new ERP system during the fiscal third quarter of 2024 ended February 25, 2024.[1]  The disastrous roll-out of the ERP system caused the Company to lose $135 million in net sales during the quarter and required a $330 million reduction to its sales guidance for the full fiscal year of 2024.  Analysts at CFRA called the Company's financial results "*a disaster of a quarter, as the ERP transition proved tougher than expected*," while Barclays analysts explained that "investors' worst fears about the possible disruptions in the [fiscal third quarter of 2024] associated with [Lamb Weston's] ERP transition appear to have been well-founded."

7.     In reaction to this news, the price of Lamb Weston common stock declined by $19.59 per share, or more than 19%, from a closing price of $101.12 per share on April 3, 2024, to a closing price of $81.53 per share on April 4, 2024.  However, Defendants continued to downplay the problems with the ERP implementation, misleadingly claiming that "the impact of the order fulfillment issues were contained to the fiscal third quarter as customer order fulfillment rates have been restored to pre-transition levels."

8.     The full truth was revealed before the markets opened on July 24, 2024, when Lamb Weston once again announced disappointing financial results.  Specifically, the Company reported results for the full fiscal year and fiscal fourth quarter of 2024 ended May 26, 2024 that came in well below the Company's expectations, and substantially reduced its financial guidance for full

---

[1] Lamb Weston reports financial results based on a fiscal year ending on or about May 26 of a given year.

fiscal year 2025.  Lamb Weston attributed its "disappoint[ing]" financial results and diminished outlook to "impacts associated with the Company's ERP transition[,]" including the loss of customers and market share stemming from the botched implementation.  Analysts at JPMorgan wrote that "it was harder than anticipated for [Lamb Weston] to regain customer orders lost during the ERP transition."  Similarly, Barclays analysts noted that "[]specific executional issues such as ERP disruptions . . . have only exacerbated share losses."

9.      Following this news, the price of Lamb Weston common stock declined by another $22.20 per share, or more than 28%, from a closing price of $78.62 per share on July 23, 2024, to a closing price of $56.42 per share on July 24, 2024.

10.     As a result of Defendants' wrongful acts and omissions, and the resulting declines in the market value of Lamb Weston common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Lamb Weston is headquartered in this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Based in West Palm Beach, Florida, Plaintiff West Palm Beach Fire administers a retirement benefit plan of approximately $276 million on behalf of more than 464 active, retired, and inactive, non-retired members and their beneficiaries.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Lamb Weston common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Lamb Weston is incorporated under the laws of Delaware, with its principal executive offices located in Eagle, Idaho.  Lamb Weston common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "LW."

17.     Defendant Thomas P. Werner ("Werner") is, and was at all relevant times, President and Chief Executive Officer ("CEO") of Lamb Weston and a member of the Company's Board of Directors.

18.     Defendant Bernadette M. Madarieta ("Madarieta") is, and was at all relevant times, Chief Financial Officer ("CFO") of Lamb Weston.

19.     Defendants Werner and Madarieta (together, the "Individual Defendants"), because of their positions with Lamb Weston, possessed the power and authority to control the contents of, *inter alia*, Lamb Weston's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of Lamb Weston's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to

prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

20.     Lamb Weston and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Based in Idaho, Lamb Weston is a food processing company and one of the world's largest producers of frozen potato products, including French fries, which the Company sells to fast-food restaurant chains such as McDonald's.  For years, Lamb Weston has discussed the importance of transitioning to an updated ERP system.  In 2019, for example, CEO Werner explained that implementing a new ERP system will "drive productivity and reduce costs by streamlining supply chain, commercial and back-office processes, while also improving our demand in operations planning across our global manufacturing footprint."  However, due to challenges emanating from the COVID-19 pandemic, the Company paused its work on transitioning to a new ERP system.

22.     By the start of the Class Period, Lamb Weston announced that it had completed the design work for its new ERP system that would manage and integrate the most important parts of the Company's business.  The new ERP system was to replace Lamb Weston's antiquated operating and financial systems, which according to CFO Madarieta suffered from "decades of under-spending in IT."

23.     The ERP project tied into the Company's "Win-as-One" initiatives, which were created to drive supply-chain savings for Lamb Weston as the COVID-19 pandemic eased.  The Company described the "Win-as-One" program as a "series of safety, quality and productivity initiatives in [Lamb Weston's] manufacturing facilities and across [its] procurement, transportation and distribution networks."  According to the Company, its new ERP system would provide better data systems that would drive increased productivity and cost savings for Lamb Weston, as well as increasing the efficiency of the Company's operational execution.  The implementation of a new ERP system was critical to Lamb Weston's operations, as it was designed to manage supplier payments, inventories, warehousing, customer invoicing, and order shipments.

24.     By late November 2023, Lamb Weston had already transitioned some of its central systems to its new ERP infrastructure.

**Defendants' Materially False and Misleading Statements**

25.     The Class Period begins on July 25, 2023, when, prior to the opening of the markets, Lamb Weston issued a press release announcing its financial results for its fiscal fourth quarter and full fiscal year 2023, which ended on May 28, 2023.  In the press release, the Company highlighted its "capital investments to upgrade its information systems and ERP infrastructure."  The press release also included the Company's financial guidance, noting that for full fiscal year 2024, the Company expected to generate net sales between $6.7 billion and $6.9 billion, net income between $725 million and $790 million, and adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") between $1.45 billion and $1.525 billion.

26.     During the related earnings conference call held later that day, CEO Werner stated, "[w]e continue to strengthen our operational infrastructure by completing the design work for the next phase of our new [ERP] system[,]" highlighting that the Company will "begin implementing

this new system across a portion of our supply chain in North America later this year."   Later during the same call, CFO Madarieta discussed the Company's guidance for full fiscal year 2024, emphasizing again that Lamb Weston was "targeting sales of $6.7 billion and $6.9 billion."

27.     Additionally, on July 25, 2023, Lamb Weston filed with the SEC its Annual Report on Form 10-K for its fiscal fourth quarter and full fiscal year 2023.   In that Form 10-K, the Company purported to warn the market that "[p]roblems with the transition, design, or implementation of our new ERP system could interfere with our business and operations and adversely affect our financial condition."   The Company's Form 10-K also warned investors of the ostensible risk that Lamb Weston "may continue to experience[] difficulties as we transition to new upgraded systems and business processes[,]" before cautioning that "[a]ny disruptions, delays, or deficiencies in the transition, design, and implementation of a new ERP system . . . could have a material adverse effect on our business, financial condition, and results of operations."

28.     On October 5, 2023, Lamb Weston issued a press release announcing its financial results for its fiscal first quarter of 2024, which ended on August 27, 2023.  In the press release, Lamb Weston emphasized its "increased investments to upgrade the Company's information systems and ERP infrastructure[.]"  The press release also highlighted that Lamb Weston was raising its financial guidance for full fiscal year 2024, as the Company was now expecting to generate net sales between $6.8 billion and $7 billion, net income between $800 million and $870 million, and adjusted EBITDA between $1.54 billion and $1.62 billion.

29.     During the related earnings conference call held later that same day, CFO Madarieta discussed the Company's revised guidance for full fiscal year 2024, emphasizing again that "[b]ased on our strong first quarter performance," Lamb Weston "continue[s] to expect strong net

sales gains for the year and have increased our annual net sales target to $6.8 billion to $7 billion, which is up from our previous target[.]"

30.     On October 11, 2023, Lamb Weston issued a press release in advance of the Company's 2023 Investor Day that was being held that same day.  In the press release, Lamb Weston highlighted its "Continued Strong Execution of Strategic Growth Initiatives," and noted that the Company was reaffirming its recently increased financial guidance for full fiscal year 2024.  The press release also represented that Lamb Weston's capital allocation was focused on "[s]upporting growth and scale through strategic investments to increase manufacturing flexibility, enhance innovation, and improve its information technology infrastructure[.]"

31.     During Lamb Weston's Investor Day conference call, CEO Werner told investors that "[w]e are continuing to execute our strategies through our investments in business growth[,]" which included "ERP and [information technology or] IT system upgrades."  Later during the same call, CFO Madarieta stated that Lamb Weston had "multiple strategic levers that we can pull to drive margin improvement," including "supply chain productivity initiatives" with Company's "Win-as-One" program, and the "optimiz[ation] [of] our global manufacturing network over the long term, which will be aided by a global ERP system once it's fully implemented[.]"

32.     On January 4, 2024, Lamb Weston issued a press release announcing its financial results for its fiscal second quarter of 2024, which ended on November 26, 2023.  The press release quoted CEO Werner emphasizing that the Company reaffirmed its 2024 guidance because "[w]e continue to expect to deliver strong sales and earnings growth[.]"

33.     During the accompanying earnings conference call, CFO Madarieta gave an update on Lamb Weston's ERP implementation, noting that since late November 2023, when the Company began transitioning its central systems over to the new ERP platform, Lamb Weston had

been "experiencing the usual bumps associated with these [] large-scale projects." However, CFO Madarieta explained to the market that the Company "[did not] expect that the cutover will have a material impact on our full year business or operating results[,]" as "[t]he estimated financial impact of the [ERP] system's go live is included in our fiscal 2024 targets." She further specified that those targets incorporated, among other things, the impact of "reduced shipments due to short-term inventory visibility challenges at our third-party finished goods warehouses."

34.     Additionally, as the Company's ERP system was being implemented throughout the quarter, CFO Madarieta assured investors of Lamb Weston's "positive year-over-year [sales] volume growth in our fiscal fourth quarter." Indeed, in response to an analyst's question about the impact of the ERP implementation on Lamb Weston's sales volumes in the fiscal third quarter of 2024, CFO Madarieta stated that sales volumes were "tempered in terms of [] any increase as it relates to volume in the third quarter[,] before emphasizing that sales volumes are "definitely[] positive in the fourth quarter as we had originally projected."

35.     Before the markets opened on April 4, 2024, the truth began to emerge when Lamb Weston issued a press release announcing its financial results for its fiscal third quarter of 2024, which ended on February 25, 2024, and disclosing significant problems with the Company's transition to its new ERP System. CEO Werner was quoted stating that "[t]he transition to a new [ERP] system in North America negatively impacted our financial results in the quarter by more than we expected[.]" Specifically, CEO Werner reported that the ERP transition "reduced the visibility of finished goods inventories located at distribution centers, which affected our ability to fill customer orders[,]" leading to "pressured sales volume and margin performance."

36.     In the same press release, Lamb Weston reported that fiscal third quarter net sales fell 12% compared to the prior year quarter, noting that "$135 million of the decline [was]

attributable to the ERP transition."  For sales volumes in the fiscal third quarter, the Company also reported a 16% decline, with half of the "decline related to unfilled customer orders resulting from the Company's transition to a new ERP system[.]"  In addition, Lamb Weston disclosed that the ERP transition had negatively impacted the Company's fiscal third quarter net income by $72 million and adjusted EBITDA by $95 million, of which $55 million was due to lower order fulfillment rates, and $40 million was due to incremental costs and expenses directly related to the Company's ERP implementation.

37.      The fiscal third quarter of 2024 press release also reported that Lamb Weston had slashed its financial guidance for full fiscal year 2024, including a $330 million reduction to its sales outlook at the midpoint "to reflect the higher-than-expected impact on customer order fulfillment rates from the transition to a new ERP system[.]"  Specifically, for full fiscal year 2024, Lamb Weston was now expecting net sales between $6.54 billion and $6.60 billion, net income between $770 million and $790 million, and adjusted EBITDA between $1.48 billion and $1.51 billion.

38.      Following these disclosures, analysts at Barclays reported that "investors' worst fears about the possible disruptions in the [fiscal third quarter of 2024] associated with [Lamb Weston's] ERP transition appear to have been well-founded."  In addition, CFRA analysts significantly cut their price target for Lamb Weston's shares, explaining that the Company endured "*a disaster of a quarter, as the ERP transition proved tougher than expected*[.]"  As a result of this news, the price of Lamb Weston common stock shares declined by $19.59 per share, or more than 19%, from a closing price of $101.12 per share on April 3, 2024, to a closing price of $81.53 per share on April 4, 2024, on extraordinary trading volume.

39.     Despite these revelations, Defendants continued to mislead investors regarding issues with the design and implementation of the Company's new ERP system.  For example, in the Company's press release for the fiscal third quarter of 2024, CEO Werner asserted that "after implementing systems adjustments and modifying processes, we believe the impact is behind us as our order fulfillment rates have normalized."  Similarly, Lamb Weston noted that "the impact of the order fulfillment issues [was] contained to the fiscal third quarter as customer order fulfillment rates have been restored to pre-transition levels."  Unbeknownst to investors, however, the Company was still struggling to transition to the new ERP system, which continued to negatively impact Lamb Weston's financial results.

40.     The statements set forth above in ¶¶ 25-39 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants failed to disclose that: (1) ongoing problems associated with the Company's ERP system were hindering its successful implementation; (2) despite knowing of such problems, Lamb Weston implemented an ERP system that was not ready to go live; (3) the risk of negative impacts from the unsuccessful implementation of the Company's ERP system had already begun to materialize, including the risk of losing substantial market share; and (4) as a result of the above, Defendants' positive statements about the Company's business, operations, and prospects, including its financial guidance for 2024, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Is Fully Revealed**

41.     The truth was fully revealed before the markets opened on July 24, 2024, when Lamb Weston issued a press release announcing its financial results for its fiscal fourth quarter and full fiscal year 2024, which ended on May 26, 2024.  In the press release, CEO Werner called the

Company's fiscal fourth quarter "disappoint[ing,]" as "price/mix results were below our expectations, while market share losses . . . were greater than we expected." Furthermore, the press release reported that in 2024, Lamb Weston's net sales again were "reduced by an estimated $135 million due to impacts associated with the Company's ERP transition." In addition, sales volume dropped 10% year-over-year, with one-third "of the volume decline reflect[ing] share losses and the impact of unfilled customer orders related to the ERP transition[.]" Lamb Weston similarly disclosed that the ERP transition negatively impacted the Company's 2024 net income by $95 million, of which $55 million was due to lower order fulfillment rates and $40 million was due to incremental costs and expenses related to problems the Company encountered through its ERP implementation, and that "adjusted EBITDA had a $95 million negative impact related to the ERP transition[.]"

42.     The press release also included the Company's financial guidance for full fiscal year 2025, "reflecting the carryover impact of market share losses incurred in the prior year[.]" Specifically, for 2025, Lamb Weston was expecting net sales between $6.6 billion and $6.8 billion, net income between $630 million and $705 million, and adjusted EBITDA between $1.38 billion and $1.48 billion—metrics all below the Company's financial projections for 2024 issued at the start of the Class Period.

43.     During the accompanying earnings conference call held that same day, CEO Werner explained that the Company's "sales and earnings performance fell well short of our targets" due to, among other things, "higher-than-anticipated market share losses." CFO Madarieta later quantified the earnings shortfall, revealing that in the fourth quarter, Lamb Weston's sales declined 5% and sales volume dropped 8%, of which nearly 5% points of that decline "was driven [] by higher-than-estimated share losses."

44.     Analysts again reacted strongly to the Company's earnings release, as CFRA analysts significantly cut their price target for Lamb Weston's shares for the second consecutive quarter citing "***ongoing share losses stemming from the botched ERP transition***[.]"  Similarly, analysts at Barclays recognized that they "clearly misjudged the magnitude of . . . [Lamb Weston's] own executional issues[,]" emphasizing that the "***[]specific executional issues such as ERP disruptions . . . have only exacerbated share losses***."  JPMorgan analysts wrote that "it was harder than anticipated for [Lamb Weston] to regain customer orders lost during the ERP transition."  The analysts also criticized as "optimistic" the Company's prior "messaging" at the time of its fiscal third-quarter results that "***because of [Lamb Weston's] relationships and direct sales force, ERP-driven volume losses would quickly be recovered***."

45.     In reaction to these disclosures, the price of Lamb Weston common stock shares dropped another $22.20 per share, or more than 28%, from a closing price of $78.62 per share on July 23, 2024, to a closing price of $56.42 per share on July 24, 2024, on extraordinary trading volume.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Lamb Weston common stock between July 25, 2023 and July 23, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Lamb Weston shares actively traded under the symbol "LW."  Millions of Lamb Weston shares were traded publicly during the Class Period on the NYSE.  As of July 17, 2024, the Company had more than 143 million shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Lamb Weston or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

48.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

50.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)    whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)       whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Lamb Weston;

d)       whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Lamb Weston;

e)       whether the market price of Lamb Weston shares during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)       the extent to which the members of the Class have sustained damages and the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## UNDISCLOSED ADVERSE INFORMATION

52.     The market for Lamb Weston common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Lamb Weston's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased Lamb Weston's common stock relying upon the integrity of the market price of the Company's securities and market information relating to Lamb Weston and have been damaged thereby.

53.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Lamb Weston common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Lamb Weston's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times.  Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

54.     As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

55.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Lamb Weston, their control over, receipt, and/or modification of Lamb Weston's allegedly materially misleading statements and omissions, and/or

their positions with the Company, which made them privy to confidential information concerning Lamb Weston, participated in the fraudulent scheme alleged herein.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

56.     As a result of their purchases Lamb Weston's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

57.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Lamb Weston who knew that the statement was false when made.

## **LOSS CAUSATION**

58.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

59.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Lamb Weston common stock and operated as a fraud or deceit on the Class.   When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Lamb Weston common stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

60.     The market for Lamb Weston securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Lamb Weston common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased the Company's common stock relying upon the integrity of the market price of Lamb Weston shares and market information relating to Lamb Weston and have been damaged thereby.

61.     At all times relevant, the market for Lamb Weston common stock was an efficient market for the following reasons, among others:

a)      Lamb Weston was listed and actively traded on the NYSE, a highly efficient and automated market;

b)      As a regulated issuer, Lamb Weston filed periodic public reports with the SEC and/or the NYSE;

c)      Lamb Weston regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)      Lamb Weston was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

62.     As a result of the foregoing, the market for Lamb Weston common stock promptly digested current information regarding Lamb Weston from all publicly available sources and

reflected such information in the price of Lamb Weston's common stock.  Under these circumstances, all purchasers of Lamb Weston common stock during the Class Period suffered similar injury through their purchase of common stock at artificially inflated prices, and a presumption of reliance applies.

63.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder Against All Defendants**

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lamb Weston common stock; and (iii) cause Plaintiff and other members of the Class to purchase Lamb

Weston common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Lamb Weston common stock in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

67.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Lamb Weston's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lamb Weston's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Lamb Weston and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

68.     Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company and a member of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

69.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lamb Weston's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock.   As demonstrated by Defendants' misstatements of the Company's business, operations, and prospects, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

70.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Lamb Weston common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the markets in which the securities trade, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Lamb Weston common stock during the Class Period at artificially inflated prices and were damaged thereby.

71.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Lamb Weston was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Lamb Weston securities, or, if they had purchased such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

72.     By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act
Against All Individual Defendants**

74.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of Lamb Weston within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities law violations as alleged herein, and exercised the same.

77.     As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class

suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

78.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)      Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)      Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

79.     Plaintiff demands a trial by jury.

Dated: August 2, 2024                    Respectfully submitted,


By: */s/ Jaren Wieland*
**MOONEY WIELAND WARREN**
Jaren Wieland ISB No. 8265
512 W. Idaho St., Ste. 103
Boise, ID 83702
Tel.: (208) 401-9219
Fax: (888) 234-8543
Email: jaren.wieland.service@mooneywieland.com

*Liaison Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund*

**SAXENA WHITE P.A.**
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
Email: lhooker@saxenawhite.com

-and-

Rachel A. Avan (*pro hac vice* forthcoming)
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
Email: ravan@saxenawhite.com
         mduenas@saxenawhite.com

*Counsel for Plaintiff West Palm Beach Firefighters'
Pension Fund*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON**
Robert D. Klausner
Bonni S. Jensen
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com
         bonni@robertdklausner.com

*Additional Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund*

## **CERTIFICATION AND AUTHORIZATION**

I, David Merrell, on behalf of the West Palm Beach Firefighters' Pension Fund ("West Palm Beach Fire"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed a complaint prepared against Lamb Weston Holdings, Inc. ("Lamb Weston") alleging violations of the federal securities laws and authorized its filing. I am authorized in my capacity as Chairman of the Board of Trustees of West Palm Beach Fire to initiate litigation and to execute this Certification on behalf of West Palm Beach Fire.

2.  West Palm Beach Fire did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.  West Palm Beach Fire is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  West Palm Beach Fire's transactions in Lamb Weston common stock during the Class Period are set forth in the attached Schedule A.

5.  West Palm Beach Fire has sought to serve and was appointed as lead plaintiff and/or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification: *None.*

6.  West Palm Beach Fire has sought to serve as a lead plaintiff or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff appointment, was not appointed lead plaintiff, or the lead plaintiff decision is still pending:

    *Wang v. Zymergen Inc.*, No. 5:21-cv-06028 (N.D. Cal.).

7.  West Palm Beach Fire will not accept any payment for serving as a representative party on behalf of the Class beyond West Palm Beach Fire's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of August, 2024.

West Palm Beach Firefighters' Pension
Fund

*David E. Merrell*
David E. Merrell (Aug 2, 2024 16:09 EDT)

David Merrell, Chairman

**SCHEDULE A**
**West Palm Beach Firefighters' Pension Fund**
**Transactions in Lamb Weston Holdings, Inc.**

| Common Stock Purchases | | |
|---|---|---|
| **Date** | **Shares** | **Price** |
| 10/19/23 | 202 | $86.2500 |
| 10/20/23 | 902 | $87.4100 |
| 11/14/23 | 991 | $95.7000 |
| 04/01/24 | 674 | $104.0500 |
| 04/05/24 | 343 | $80.2000 |
| 05/17/24 | 240 | $86.2400 |
| 05/20/24 | 652 | $86.9300 |
| 05/23/24 | 481 | $88.6900 |
| 06/21/24 | 49 | $84.1600 |
| 06/26/24 | 185 | $84.3200 |

| Common Stock Sales | | |
|---|---|---|
| **Date** | **Shares** | **Price** |
| | | |